**In re Anonymous No. 68 D.B. 97**

Disciplinary Board Docket no. 68 D.B. 97.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SCHULTZ, *Member,* August 5, 1998—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

A petition for discipline was filed on May 21, 1997 by Office of Disciplinary Counsel against respondent, [ ], Esquire. The petition charged respondent with violations of Rules of Professional Conduct 1.8(f),

3.3(a)(1), 3.3(a)(4), 8.4(c) and 8.4(d). Respondent filed an answer on June 30, 1997.

A disciplinary hearing was held on August 29, 1997 before Hearing Committee [   ] comprised of Chair [   ], Esquire, and Members [   ], Esquire, and [   ], Esquire. Respondent was represented by [   ], Esquire. Petitioner was represented by [   ], Esquire. The committee filed a report on January 7, 1998. The majority recommended a public censure. The dissenting member recommended a private reprimand. No briefs on exceptions were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of March 4, 1998.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was born on December 10, 1948, was admitted to practice law in the Commonwealth on October 18, 1973, maintains his office at [   ] and is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Between 1992 and 1993, the [A] Funeral Home and [B] Family Services were involved in a series of lawsuits in the Court of Common Pleas of [   ] County.

(4) In 1992 and early 1993, [C], proprietor of [B] Family Services and the [D] Funeral Homes, became involved in discussions with a number of individuals who had pre-need agreements (pre-paid funeral arrangements) with his competitor, the [A] Funeral Home. These clients were [E], [F], [G] and [H]. [C] agreed to assist these individuals in recovering funds they had paid to [A] under pre-need agreements.

(5) In February 1993, [C] sought counsel to represent the pre-need clients. [C] was referred to respondent by his own counsel, [I] and [J]. On February 4, 1993, he met with respondent and entered into an oral agreement with respondent to advance costs of litigation, including respondent's fees at an hourly rate for services provided to the pre-need clients, with the expectation he would be reimbursed if the litigation was successful. On March 5, 1993, respondent drafted a letter to [C], stating an understanding that [C] would pay respondent's firm on an hourly basis up to a maximum of $15,000, and be reimbursed from any amount recovered under a contingent fee agreement with the pre-need clients. This letter was never sent to [C] but reflected respondent's understanding of their fee arrangement.

(6) [C] arranged a meeting between respondent and the pre-need clients at his funeral home on March 12, 1993. During the meeting, respondent reviewed with the clients a complaint which he had already drafted. There was a brief discussion of fees and costs during which time [C] indicated he would be able to provide financial assistance. Respondent and [C] discussed fee arrangements on a contingent fee basis, but no agreements were signed at the meeting, and neither respondent nor [C] disclosed that [C] would be advancing fees to respondent. The pre-need clients did not sign a contingent fee agreement at that meeting.

(7) On April 30, 1993, respondent filed a class action suit against [A] Funeral Home.

(8) Between May 1993 and December 1994, respondent sent billing statements for costs and services on an hourly basis. In all, [C] paid fees and costs in a total amount of $9,003 to respondent's firm. Respondent also sent copies of correspondence and pleadings to [C].

(9) By letter of February 3, 1994, [E] discharged respondent from representation and requested return of her file.

(10) On March 15, 1994, defendants filed a pleading entitled petition for summary judgment and asserted that the suit against [A] Funeral Home should be dismissed based upon champerty and barratry, as the suit was solicited by, financed by, and maintained by [C] and not the named plaintiffs.

(11) On March 21 and 22, 1994, respondent met with the pre-need clients for the first time since March 12, 1993, for the purpose of preparing affidavits in response to the petition for summary judgment. The clients also signed contingent fee agreements at these meetings.

(12) The affidavits stated that the full nature of [C's] involvement was disclosed to the clients, that [C] had offered to assist with costs if such became a problem, but he was not currently involved with the lawsuit.

(13) On March 30, 1994, respondent filed an answer opposing defendants' petition for summary judgment and a brief in opposition to the petition for summary judgment. The brief and answer were supported by the statements contained in the affidavits.

(14) Respondent did not explain his agreement with [C], who at the time was expending his own money to finance the litigation.

(15) On August 17, 1994, an argument on the petition for summary judgment was held before Judge [K].

"(a) In response to the court's inquiry, 'What do you have to say with regard to this issue?,' respondent stated, 'I said that I would advance the costs, and as I pointed it out, it is in the contingent fee agreement that the costs are the responsibility of the individuals.' [C] said, 'Well if they get to be a problem, and obviously they are not a problem at this point because the only costs have been filing costs, there haven't been any depositions so we don't really have any problem of concern. At this point it hasn't occurred yet.' (N.T. p. 21.) Respondent indicated to the court that [C's] remark was an 'off-handed, friendly remark.' (Exhibit no. 27, p. 21.)

"(b) In response to the court's inquiry about 'What about [C]?,' respondent stated, 'Certainly I've run into him on social occasions. I haven't done anything, you know, out with him or anything like that, but I haven't run into him so I know him and I saw no problem with sending him a copy of a letter that says I am not going to agree to depositions. I think it is a justifiable concern on his part as to whether or not he has to appear at a deposition, and I also sent one to his counsel. I don't see anything wrong with that.' (N.T. p. 23.)

"(c) In response to the court's inquiry about what facts were in dispute, respondent replied, 'There is no party involved. [C] is not involved. The fact that someone may be friendly to or even facilitating getting parties and counsel together doesn't make that person involved.' (N.T. p. 30.) Respondent further stated that, 'There is

no evidence that [C] has expended any money in this suit.' (N.T. p. 30.)"

(16) On October 24, 1994, Judge [K] issued an order denying defendants' petition for summary judgment. The judge quoted respondent's statements and oral argument as support for the proposition that [C] had not agreed to finance litigation. A hearing on the certification of the matter as a class action was scheduled for December 29, 1994.

(17) Prior to the hearing of December 29, 1994, counsel for defendants served respondent with a subpoena to testify at the hearing and produce records regarding payment of fees by [C].

(18) Shortly before the hearing, respondent's law firm turned over extensive records on the contractual arrangements with the pre-need clients and with [C].

(19) The hearing was held on December 29, 1994. Respondent did not appear. [L], Esquire, a member of respondent's firm, represented the plaintiffs at the hearing.

(20) At the hearing, [C] testified to payments he made to respondent.

(21) At the hearing, [F] and [H] testified that they were not aware that [C] had paid respondent's fees.

(22) On September 21, 1995, Judge [K] entered an opinion and order granting defendants' motion to dismiss based on champerty and barratry.

(23) Judge [K's] decision was upheld by the Superior Court on November 25, 1996.

(24) Respondent has no prior record of discipline.

## III. CONCLUSIONS OF LAW

Respondent, by his conduct as set forth above, has violated the following Rules of Professional Conduct:

(1) R.P.C. 1.8(f)—A lawyer shall not accept compensation for representing a client from one other than the client unless: (1) the client consents after full disclosure for the circumstances and consultation.

(2) R.P.C. 3.3(a)(1)—A lawyer shall not knowingly make a false statement of material fact or law to a tribunal.

(3) R.P.C. 3.3(a)(4)—A lawyer shall not knowingly offer evidence that the lawyer knows to be false.

(4) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(5) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## IV. DISCUSSION

This matter is before the board upon a petition for discipline filed against respondent charging him with violations of Rules of Professional Conduct 1.8(f), 3.3(a)(1), 3.3(a)(4), 8.4(c) and 8.4(d). The record reveals that in 1992 and 1993, the [A] Funeral Home and [B] Family Services were business competitors in funeral services in [ ] County and were opposing parties in numerous lawsuits filed in the [ ] County Court of Common Pleas. In early 1993, several individuals who had pre-need contracts for funeral services with [A] Funeral Home attempted to terminate these contracts and recover their money. These individuals were unsuccessful in their attempts to obtain recourse with [A], and contacted [C], the proprietor of [B] Family Services. [C] agreed to help recover the funds. In February 1993, [C] contacted respondent and apprised him of the situation and discussed respondent's representation of the

pre-need clients. [C] was willing to advance the litigation costs, including respondent's fees to a certain amount. Respondent met with the pre-need clients in March 1993. At the meeting, there was a brief discussion of fees and costs at which time [C] indicated he would provide financial assistance to support litigation, if such became necessary. Respondent stated he would represent the clients on a contingent fee basis, but such agreements were not executed until March 1994.

Respondent filed a class action lawsuit against [A] Funeral Home on April 30, 1993. Between May 1993 and December 1994, respondent billed [C] for costs and services on an hourly basis for a total of $9,003. Respondent provided [C] with copies of correspondence and pleadings and consulted him on the case. In March 1994, [A] filed a petition for summary judgment asserting that the suit should be dismissed based on champerty and barratry. [A] alleged that the suit was solicited, financed, and maintained by [C], and not the plaintiffs named in the complaint. On March 21 and 22, 1994, respondent met with his clients for the preparation of affidavits in response to the motion for summary judgment. This was the first time since March 1993 that respondent met with the clients. Affidavits were prepared by respondent and signed by the clients. These affidavits indicated that as to the issue of costs, [C] made a remark about assisting in the payment of costs, and this remark was an off-handed, friendly remark. This constituted the clients' understanding of [C's] involvement in the suit. The clients then signed a contingent fee agreement. Respondent filed an answer on March 30, 1994 and denied that the suit was solicited by [C]. Respondent filed a brief in opposition to the summary judgment on the same date and argued, among other things, that the full nature of [C's] involvement

was disclosed to the plaintiffs, [C] had no involvement, and [C] only offered to assist plaintiffs with costs if costs became a problem, and the respondent's compensation was by contingent fee agreement.

An argument on the petition for summary judgment was held in August 1994 before Judge [K]. Respondent represented to the judge that he accepted the case on a contingent fee basis, and that [C] had not expended any money to finance the suit. Respondent did not reveal that he was billing [C] for his services. He did not reveal that [C] had been consulted on pleadings and received copies of correspondence and pleadings. Based on respondent's statements, Judge [K] denied the petition for summary judgment. In December 1994, counsel for [A] served respondent a subpoena to produce records regarding the payment of fees by [C]. Respondent's firm turned over extensive records on the contractual arrangements with the pre-need clients and with [C]. At the December 29, 1994 hearing, it came to light that respondent was billing [C], and [C] had actively participated in all matters relative to litigation from its inception. Judge [K] dismissed the action based on champerty and barratry. This decision was affirmed by the Superior Court in November 1996.

The board's responsibility in this matter is to determine whether respondent violated the charged Rules of Professional Conduct and, if so, the appropriate sanction in response to the violations. Respondent is charged with accepting compensation from one other than his client without full disclosure to the client and without consent. He is charged with making false statements of fact in writing in his answer opposing petition for summary judgment and in his brief in opposition to petition for summary judgment. Respondent is charged with making false statements of fact to the court in

48

an argument. Finally, respondent is charged with engaging in conduct involving dishonesty and misrepresentation, and conduct which caused prejudice to the administration of justice. Respondent admitted that he violated R.P.C. 1.8(f) by accepting compensation from [C], who was not his client. Respondent billed [C] at an hourly rate and received in total $9,003 for fees and costs. Respondent did not inform his pre-need clients, the parties to the lawsuit, that he had such an arrangement with [C], nor did respondent seek his clients' consent to this arrangement.

In the answer opposing defendants' petition for summary judgment, filed by respondent, he denied that the suit was solicited by [C] and that he was retained by [C]. Respondent knew this was not true. In the brief in opposition to defendants' petition for summary judgment, respondent made specific factual statements and argued factual conclusions that respondent knew were false. These statements referred to and relied on the affidavits drafted by respondent. Respondent created a record which created a false impression, and then based his arguments in his brief on the misleading record. Respondent continued to make misleading statements based on this record in his argument on the summary judgment petition in court. Respondent told the court that [C] said he would pay for costs if such became a problem, but that had not happened. In reality, respondent had already billed [C] for costs and fees. Respondent told the court that he saw [C] on social occasions and sent him a copy of one letter concerning a deposition. In fact, respondent consulted with [C] on different aspects of the lawsuit and sent [C] copies of correspondence and pleadings. Respondent told the court there was no evidence that [C] expended any money in the suit, when in fact he knew there was

evidence but did not reveal it to the court. Respondent stated that he took the case on a contingent fee basis, which was a partial truth, but he failed to tell the court of his arrangement with [C]. It is evident from the record that respondent violated Rules 3.3(a)(1), 3.3(a)(4), 8.4(c) and 8.4(d).

Respondent's lack of candor in this matter is troubling. He created a record to support his answer and brief opposing a motion for summary judgment that was based on his clients' ignorance of his fee agreement with [C]. He then carefully argued his case within the confines of this record, failing to apprise the court of his arrangement with [C]. By these actions, respondent went beyond the ethical limits of skillful advocacy. Respondent misled the court and compromised the truth-seeking function of the judicial process. The board recommends that a public censure be imposed.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, [ ], receive a public censure from the Supreme Court of Pennsylvania.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Chair Rudnitsky recused herself.

Board Member Caroselli did not participate in the March 4, 1998 adjudication.

## ORDER

And now, August 5, 1998, upon consideration of the report and recommendations of the Disciplinary Board dated June 4, 1998, it is hereby ordered that

[respondent] be subjected to public censure by the Supreme Court.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.